**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FRANCISCO PALACIOS,

      Petitioner,

v.                                                                  Case No. 8:06-cv-38-T-24TBM

JAMES R. MCDONOUGH[1],

      Respondent.

_____/

## ORDER

      This cause is before the court upon Petitioner Francisco Palacios's ("Palacios")

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Palacios challenges his

1999 conviction entered by the Thirteenth Judicial Circuit Court, Hillsborough County,

Florida. (Dkt. 1). Respondent has filed a response to the petition (Dkt. 8), and Palacios

has filed a reply thereto (Dkt. 9).

### Background

      Palacios was charged by Information dated September 10, 1998, with trafficking in

cocaine. (Dkt. 10, Ex. 1, p. 18).[2] Palacios entered a *nolo contendere* plea on March 1,

1999. (Dkt. 10, Ex. 1, p. 61). The state trial court thereafter sentenced Palacios to a term

---

[1] In his petition, Palacios names James V. Crosby, Jr., former Secretary of the Department of Corrections, as the party respondent in this case. As of the date of this order, James R. McDonough is the Secretary of the Department of Corrections. Accordingly, pursuant to Rule 25 of the Federal Rules of Civil Procedure and Rule 2 of the Rules Governing Section 2254 Cases, the Court will substitute McDonough as Respondent. *See* Fed. R. Civ. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases (2006).

[2] Respondent has filed with its response the record on direct appeal from the state district court of appeal. (Dkt. 10, Ex. 1). The page numbers of references in this exhibit are designated by the page numbers located in the bottom right-hand corner of the page.

of imprisonment of 15 years.  (Dkt. 10, Ex. 1, p. 64).  Palacios timely filed a direct appeal.

On May 19, 2000, in Case No. 2D99-1480, the state district court of appeal per curiam

affirmed his conviction. (Dkt. 10, Ex. 3A).  *See Palacios v. State*, 763 So.2d 328 (Fla.2d

DCA 2000) [Table].  Palacios filed a motion for rehearing which was denied by the state

district court of appeal on June 15, 2000.  (Dkt. 10, Ex. 3C).  The mandate issued on July

17, 2000.

On July 10, 2001, Palacios signed his Rule 3.850 motion for post-conviction relief

in which he raised two claims, and subparts thereto, of ineffective assistance of counsel.

(Dkt. 10, Ex. 5).  By order entered on January 25, 2002, the state trial court denied

subclaim 1a and directed the State to respond to the remaining allegations.  (Dkt. 10, Ex.

5, pp. 19-23).  An evidentiary hearing on the Rule 3.850 motion was held on March 5, 2003.

By order rendered on April 23, 2003, the state trial court denied the remaining claims.  (Dkt.

10, Ex. 5, pp. 85-90).  Palacios filed a *pro se* motion for rehearing and a motion for

transcripts which was denied by the state district court of appeal by order rendered on April

25, 2003.  (Dkt. 10, Ex. 4A).  Palacios, through counsel, filed a motion for belated appeal

of the denial of the Rule 3.850 motion.[3]  On July 23, 2003, in Case No. 2D03-2533, the

state district court of appeal granted the motion.  Appellate counsel filed an *Anders* brief

on Palacios's behalf.  (Dkt. 10, Ex. 7).  Palacios also filed a supplemental *pro se* brief on

his own behalf.  (Dkt. 10, Ex. 11).  On August 24, 2005, the state district court of appeal per

curiam affirmed the denial of the Rule 3.850 motion.  (Dkt. 10, Ex. 12); *See Palacios v.*

---

[3] Palacios also filed a *pro se* notice of appeal prior to counsel's filing the motion for belated appeal.
The state district court of appeal consolidated the two cases by order entered on August 30, 2004.  (Dkt. 10,
Ex. 6).

*State*, 915 So.2d 1211 (Fla. 2d DCA 2005) [Table].  On September 13, 2005, Palacios filed

a motion for rehearing which was denied on October 6, 2005.  (Dkt. 10, Ex. 13).  The

mandate issued on October 27, 2005.

Palacios sought review of the denial of the Rule 3.850 motion in the Florida Supreme

Court.[4]  The state supreme court dismissed the petition for review on December 23, 2005.

(Dkt. 10, Ex. 14).  *See Palacios v. State*, 920 So.2d 627 (Fla. 2005) [Table].

The instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

was signed and dated by Palacios on December 30, 2005, and received by this Court on

January 6, 2006.  The petition is timely.  Upon review of the record, Palacios's petition must

be DENIED.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district

court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody

in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  Where a state court initially considers the issues raised in the petition and

enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.

*See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880,

889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits

---

[4] *See* online docket for the Florida Supreme Court at: http://jweb.flcourts.org/pls/docket/ds_docket.

in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).  *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).  Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002) ("[T]he statutory language [in § 2254(d)(1)] focuses on the result, not the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

Since Palacios's conviction was entered after the AEDPA was enacted, his petition is subject to the provisions thereof.  Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Palacios's claim.  *See Mobley v. Head,*  267 F.3d 1312, 1316 (11th Cir. 2001).

### Standard for Ineffective Assistance of Counsel Claims

In two of the grounds for relief presented in the instant petition, Palacios asserts that his right to effective assistance of counsel was violated. The Sixth Amendment protects a

defendant's right to the effective assistance of counsel during criminal proceedings against him.  To prevail on a claim of ineffective assistance of counsel in the context of a *nolo contendere* plea, Palacios must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Hill v. Lockhart*, 474 U.S. 52 (1985); *Jones v. McDonough*, 2006 WL 1460268 at *4 (M.D. Fla., May 23, 2006); *Henderson v. Singletary*, 837 F.Supp. 1176, 1178 (M.D. Fla. 1993) (the *Strickland* test is equally applicable to a plea of *nolo contendere* based on ineffective assistance of counsel) (citations omitted).  First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation.  *Id.* at 687-88.  This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases.  *Id.* at 689.  Second, even if Palacios can show that counsel performed incompetently, he must also show there is a reasonable probability that, but for counsel's errors, he would not have pleaded *nolo contendere* and would have insisted on proceeding to trial.  *See Hill*, 474 U.S. at 59.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings.  *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318,

5

1322 (11ᵗʰ Cir. 2002) *(citing Chandler*, 218 F.3d at 1315).  Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it."  *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).  Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment.  As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

As set forth below, in rejecting Palacios's claims on the merits, the state trial court applied the *Strickland* standard of review for ineffective assistance of counsel claims.  Thus, to establish that he is entitled to relief on these claims pursuant to § 2254, Palacios must establish that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that these claims lack merit.  *See Parker*, 331 F.3d at 766.

### Discussion

**Grounds One, Two, Three and Four**

In his first four grounds, Palacios raises claims related to his motion to suppress presented to the state trial court.  Specifically, he contends in Ground One that the state trial court erred in denying his motion to suppress "since the stop and detention of his

brother, Carlos Camacho, was not supported by a reasonable, founded suspicion that Camacho was committing, had committed, or was about to commit a crime."  In Ground Two, he contends that the state trial court erred in denying the motion to suppress because "there was an absence of probable cause or other basis for the search of his vehicle after he and Camacho left the driver's license office."  In Ground Three, Palacios alleges the state trial court erred in denying the motion to suppress because "there was no probable cause to place Camacho in handcuffs and there was no justification for the continued detention of Camacho after a search of him and Palacios's vehicle revealed no contraband."  In Ground Four, he contends that the state trial court should have granted the motion to suppress because the search of the residence was involuntary.

Each of these claims was exhausted in the state courts in Palacios's motion to suppress, the hearing on the motion to suppress and on direct appeal of the denial of the motion to suppress.  (Dkt. 10, Ex. 1, pp. 28-163; Exs. 2A, 3A).  To the extent that each of these claims raises a challenge under the Fourth Amendment of the United States Constitution, the claims are not subject to federal habeas review.  *See Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the United States Supreme Court determined that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 494.  This rule applies to convictions whether based upon a guilty plea or a jury's verdict. *See Mingo v. Witt*, 2007 WL 570005 at *1 (M.D. Fla., Feb. 20, 2007) (citation omitted).

In applying *Stone*, the Eleventh Circuit has interpreted "full and fair consideration" as follows: "For a claim to be fully and fairly considered by the state court, where there are

facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.  Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims."  *Mincey v. Head*, 206 F.3d 1106, 1125 (11th Cir. 2000) (citations omitted); *see also Tukes v. Dugger*, 911 F.2d 508 (11th Cir. 1990).

In the instant case, Palacios has not demonstrated that the hearing conducted by the state trial court on his motion to suppress and the state district court of appeal's consideration of the denial of that motion denied him the opportunity of full and fair litigation of his Fourth Amendment claims.  *See Mingo*, 2007 WL 570005 at *2.   A review of the procedures in Palacios's case shows that he was afforded the opportunity to develop his claims and have them adjudicated in the state courts and thus, he cannot relitigate the same claims here in this federal habeas petition.  Palacios's allegations of state trial court error in denying his motion to suppress are insufficient to avoid the *Stone* bar to federal habeas review.  *See Mathews v. Crosby*, 2005 WL 3556041 at *8 (M.D. Fla., Dec. 29, 2005) (citations omitted).   Accordingly, Palacios's claims presented in Grounds One through Four of the instant § 2254 petition are not reviewable by this Court.

**Ground Five**

Palacios contends that his attorney[5] rendered ineffective assistance in failing to establish that Palacios had standing to object to the seizure of the alleged contraband

---

[5] Palacios was represented at the motion to suppress hearing and at his plea hearing by attorney Ray Lopez ("Lopez").

8

found during a search of Camacho's[6] residence, and in failing to investigate and call witness Tiffany Hollis.  He alleges that had counsel done so, the motion to suppress would have been granted.

Palacios raised both of these claims in his Rule 3.850 motion.  (Dkt. 10, Ex. 5, pp. 11-18).  Following an evidentiary hearing, the state trial court held in its written order denying Palacios's argument that his attorney failed to establish standing (designated as ground 1a of the motion by the state trial court), as follows:

> The facts relevant to the remaining issues relate to a search of the apartment leased to the defendant's brother.  The State asserted that the defendant's brother gave the police consent to search that apartment.  A large quantity of cocaine was found in that apartment, and the State alleged that the defendant placed that cocaine in his brother's apartment.  The defendant moved to suppress that cocaine, challenging the alleged consent by the defendant's brother.
>
> At the suppression hearing, the events leading up to that consent search were established by the testimony of several police officers, including the statements they obtained of the defendant's girlfriend, Tiffany Hollis and the statements of the co-defendant, Charlie Albert Camacho, a.k.a. Carlos Camacho Palacios (Comacho) [sic].
>
> At the suppression hearing the State established that the investigation began with a domestic violence call made by the defendant's girlfriend, Tiffany Hollis.  Ms. Hollis provided information leading the police to believe that the defendant was in possession of a large quantity of cocaine and cash, and that the defendant may have taken that contraband to the apartment of his brother.  This investigation led them to find the defendant's brother.  Several officers testified that the defendant's brother and co-defendant, Camacho, the named lessee of the subject one bedroom apartment, consented to the search of his apartment.  After obtaining the consent to search this apartment, the police found the shoebox full of controlled substances, including a trafficking amount of cocaine, in Camacho's bedroom.  After the cocaine was discovered, the defendant Francisco Palacios made post-Miranda admissions to being the sole owner of the cocaine found in the shoebox found inside Camacho's apartment.
>
> *Ground 1a*

---

[6] Charlie Albert Camacho is Palacios's brother and codefendant.

The defendant alleges that trial counsel was ineffective at the suppression hearing due to counsel's failure to establish [d]efendant's standing to object to the search and seizure of the shoebox containing cocaine.  The defendant asserts that if the defendant's standing would have been established, then the shoebox full of cocaine would have been suppressed, and the defendant's case would have been dismissed.

At the March 5, 2003 hearing, testimony was taken from the defendant and from the attorney that represented him at the suppression hearing, Ray Lopez.  In addition, the evidence presented included the February 27, 2003 testimony of the defendant's brother and co-defendant, Carlos Camacho Palacios.  The court also considered the record evidence, including pleadings and transcripts relating to the subject Motion to Suppress Evidence.

The evidence presented at the hearing indicated that, although the apartment was leased to Comacho [sic], the defendant was permitted access to the apartment, the defendant assisted in the payment of rent and utilities, the defendant had a key to the apartment, and that the defendant occasionally spent the night in that apartment.

Mr. Lopez conceded that he made a tactical decision to not raise standing at the suppression hearing because the State did not raise the issue, thereby avoiding the necessity of presenting any testimony potentially linking the defendant with the cocaine found in the apartment.  Mr. Lopez testified that he believed that it was not necessary for the defendant to establish standing under the circumstances of this case and he believed their position was strong on appeal.

The defendant has not carried his burden as to this issue.  The defendant has not shown how the alleged errors of his attorney would have caused a different result.  The defendant has not shown how these alleged errors had any effect upon the trial court's finding that the police acted within the law when obtaining the consent of the defendant's brother prior to the search of the apartment.  The defendant has not shown that the search of the shoebox inside the bedroom was impermissible, in light of the consent of the defendant's brother, the person who leased the bedroom and slept in that bedroom.  The defendant has not shown how the Fourth Amendment recognizes an expectation of privacy in the shoebox, a right which supercedes the consent to the search provided by the defendant's brother.  *U.S. v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).  Unless the [d]efendant establishes these points, then any alleged errors by his counsel would have had no effect upon the admissibility of the evidence against the defendant.  Therefore the defendant's claim under 1a is **DENIED**.

(Dkt. 10, Ex. 5, pp. 86-88) (emphasis in original).  To establish that he is entitled to relief

on this claim, Palacios must show that the state trial court incorrectly applied the *Strickland*

standard in reaching its determination that this claim lacks merit.  He has not made this showing.

In the instant petition, Palacios has not presented anything new to support his claim. Palacios makes a generalized and conclusory argument that, had counsel made the argument on standing he now suggests, his "dispositive" motion to suppress would have been granted.  He has not presented any factual evidence to demonstrate that in the absence of counsel's alleged error, the state trial court would have granted the motion to suppress.  At the evidentiary hearing on the Rule 3.850 motion, trial counsel articulated to the state trial court the underlying reasons behind his tactical decisions.  Palacios has not demonstrated that counsel's decision not to pursue the standing argument was anything other than trial strategy.  Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy.  *See Norman v. Bradshaw*, 2006 WL 3253121at *10 (N.D. Ohio, Nov. 8, 2006) (*citing Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56,59 (6th Cir. 1990)).

In his second claim of ineffective assistance raised in Ground Five, Palacios contends that Lopez was ineffective in failing to call Tiffany Hollis ("Hollis") as a witness at the motion to suppress hearing.  Relying upon the standard established in *Strickland*, the state trial court in its written order denying Palacios's Rule 3.850 motion[7] held as follows with respect to this claim (designated as ground 1b of the Rule 3.850 motion by the state

---

[7] The state trial court resolved this issue in its written order rendered on January 25, 2002, and this claim was not addressed at the March 5, 2003, evidentiary hearing on the remaining claims presented in Palacios's Rule 3.850 motion.  (Dkt. 10, Ex. 5, pp. 19-23).

trial court):

> In ground 1b, Defendant claims ineffective assistance of counsel due to counsel's failure to investigate and call Tiffany Hollis.  Specifically, Defendant claims that Ms. Hollis would have testified that she told Detective Ahles that she never saw what was in the shoe box, that she did not know what was actually in the shoe box, and she only speculated that it probably contained money or cocaine.

> However, a review of the March 1, 1999 plea and sentencing transcript reflects that Defendant told the Court the following:

> I signed a statement telling the police that the drugs were mine and that my brother had nothing to do with it.  That's all, Your Honor.

> (*See* March 1, 1999 Transcript, page 21, attached).  Since Defendant admitted to having the drugs, Defendant has failed to meet the second prong of Strickland in that he has failed to prove how counsel's alleged failure to call Ms. Hollis resulted in prejudice.  Since Defendant has failed to meet the second prong of Strickland, it is unnecessary to address the performance component.  As such, no relief is warranted upon ground 1b.

(Dkt. 10, ex. 5, pp. 21-22).

A review of the transcript of the evidentiary hearing on the Rule 3.850 motion clearly

shows that Palacios's counsel addressed the issue of Hollis's statements to police upon

cross examination of Detective Kevin Ahles.  Specifically, counsel questioned Detective

Ahles as follows:

| MR. LOPEZ: | Detective, initially, when you arrived at the apartment, it was your understanding that just a small residue amount of cocaine had been found at that apartment; is that correct? |
|---|---|
| DETECTIVE AHLES: | Yes. |
| MR. LOPEZ: | And, subsequently, you came upon information that there may have been a larger quantity of cocaine; is that correct? |
| DETECTIVE AHLES: | Yes. |
| MR. LOPEZ: | All right.  And the basis of your knowledge was based |

|                     | upon what Ms. Tiffany Hollis was saying; is that correct? |
|---------------------|-----------------------------------------------------------|
| DETECTIVE AHLES:    | That's exactly right. |
| MR. LOPEZ:          | And she didn't tell you whether or not she had actually seen the cocaine in the box but that she said – she told you that the cocaine was in the box?  You didn't actually ask her, "Did you see the cocaine?" |
| DETECTIVE AHLES:    | I did ask her, but she told me she didn't see it.  As I told you in depo, she said that she knew it was in there, however she knew it, and that was her quote, but she didn't actually see it, and I did specifically ask her. |

(Dkt. 10, Supp. I, pp. 269-70).

Just as in his Rule 3.850 motion, Palacios has not made any showing that counsel's failure to call Tiffany Hollis as a witness prejudiced him in any way such that the motion to suppress would have been granted and he would not have entered his *nolo contendere* plea.  In his reply, Palacios contends that Hollis's testimony "would have helped counsel persuade the trial court to grant his client's dispositive motion to suppress."  This assertion is vague and conclusory at best.  Palacios does not specify in his petition or reply what testimony he believes Hollis would have offered that would have persuaded the state trial court to grant the motion to suppress.  As such, he has failed to demonstrate with any specificity or evidentiary support other than his own speculation how Hollis's omission as a witness prejudiced him.

Moreover, there is no evidence before the Court to suggest, nor does Palacios even assert, that Lopez's decision not to call Hollis as a witness was anything other than a strategic choice.   Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it."  *Adams*, 709 F.2d at 1445.

"Judicial scrutiny of counsel's performance must be highly deferential ⋯ a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[8] In deciding an ineffective assistance claim, a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690.

Even if many reasonable lawyers would not have done as defense counsel did at the hearing on the motion to suppress, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. *See Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Palacios has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Thus, relief on this ground will be denied.

**Ground Six**

Palacios claims that his plea was involuntary because his attorney told him the order

---

[8] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

denying his motion to suppress would be reversed on direct appeal, thereby resulting in dismissal of the case, and because his attorney led him to believe that Camacho would not be prosecuted if Palacios entered a plea. Palacios contends that if his attorney had provided correct and accurate information, he would not have entered his plea and would have proceeded to trial. It appears from the text of his petition and reply to Respondent's response, that Palacios brings these claims in the context of ineffective assistance of counsel.

Palacios raised these claims in his Rule 3.850 motion in the state trial court. The claims (designated as grounds 2a and 2b of the Rule 3.850 motion by the state trial court) were addressed at the March 5, 2003, evidentiary hearing on that motion. In its written order denying relief, the state trial court held as follows with respect to these claims:

*Ground 2a*

In ground 2a, the defendant claims that his plea was involuntary because his attorney told him that his conviction would be reversed on appeal and that his case would be dismissed. However, at the March 5, 2003 hearing the defendant failed to establish that any expressed [sic] promise or assurance that his conviction would be reversed on appeal, or that the representations of his attorney caused him to plea rather than take this case to trial. The defendant's claims are contrary to his representations to the court at the time he entered his plea. Therefore, the defendant's claim under 2a is **DENIED**.

*Ground 2b*

In ground 2b, the defendant claims that his plea was involuntary because his trial counsel told him that if he took the blame and testified for his brother, then his brother would not be convicted.

After the defendant entered his plea and was sentenced, the State did enter into plea negotiations with the defendant's brother, Charlie Albert Comacho [sic]. Mr. Camacho was being held in jail by INS, along with his detention on the instant trafficking offenses. Although Charlie Albert Comacho [sic] was convicted, State permitted the defendant to plea to the lesser charge of possession of cocaine, and that any sentence would be suspended upon his deportation. Therefore, the record

appears that the defendant's plea did result in a favorable disposition of his brother's case.

The defendant's brother, Comacho [sic] was deposed on February 27, 2003, and his deposition was introduced at the March 5, 2003 hearing.  In Comacho's [sic] deposition, he testified that he and his brother had no discussions regarding the resolution of their charges at any time prior to entry of their respective pleas.

The defendant testified at the hearing that he had no discussions with his brother or any representative of his brother relating to the disposition of his brother's charges before the defendant entered his plea, and he did not know anything about the proposed resolution of his brother's charges.  At the hearing, the defendant presented no evidence to establish that his plea was predicated on any assurance or promise by his attorney, express or implied, regarding the disposition of his brother's charges.

Ray Lopez, the defendant's trial attorney, testified that the plea was entered against his advice.  The plea colloquy supports Mr. Lopez' [sic] testimony.

Therefore, the defendant's claim under 2b is **DENIED**.

(Dkt. 10, Ex. 5, pp. 88-90) (emphasis in original).  The record supports the state trial court's

findings.

As to the issues raised in Ground Six of the instant petition, Lopez testified as

follows at the Rule 3.850 evidentiary hearing on these issues in the state trial court:

| | |
|---|---|
| MR. GISENDANOR:[9] | Mr. Lopez, after you did [sic] discuss the plea in the trial aspect on March 1 with Mr. Palacios, on that date or on numerous previous occasions, did you tell Mr. Palacios that you would attempt to have the charges dropped against his brother or that you would speak to the State attorney about that? |
| MR. LOPEZ: | I told him that after he had insisted that he plead so that he could testify for his brother and so – and he also wanted to make a statement to the judge.  This was his insistence the entire time.  He wanted to basically take the blame for the whole thing because he felt bad about |

_____

[9] Palacios was represented at the evidentiary hearing by attorney Christian Gisendanor of the Public Defender's Office.

his brother.  After the plea was over I told him that I would speak to, I believe it was Brian Camerino who was the prosecutor.

MR. GISENDANOR:   Speak to him about what?

MR. LOPEZ:   Speak to him about the possibility of having the charges either dropped altogether or reduce [sic] because his brother was also looking at a 15 year minimum mandatory sentence and the reason Mr. Fox didn't do that is he had left the courtroom, which by the way was not this courtroom, it was courtroom 8, in front of Judge Steinberg.  He had left the courtroom and had to be somewhere else so the issue just came up and I was trying to help him out because he felt very badly about his brother and his brother, I guess, taking the hit for something that he felt he was responsible for.

MR. GISENDANOR:   Prior to him, Mr. Palacios, entering a plea, did you discuss with Mr. Palacios that if he entered a plea, that he could only help his brother?

MR. LOPEZ:   There was some conversation about that but it was after about a half an hour to 45 minutes of me telling him that he was making a mistake by not going to trial.  He was insistent on not going to trial in attempting to help his brother out during this process.

MR. GISENDANOR:   Now, as far as the motion to suppress and the appeal process, what did you tell Mr. Palacios about that?

MR. LOPEZ:   I told him again, after about half an hour to 45 minutes of telling him he should go to trial and "You're not listening to my advice", that: "If you enter a plea, we can still preserve the issue for appeal" but I would never tell him to enter a plea at the beginning of our discussions because that issue can be preserved even if we go to trial and lose.  That issue is still preserved.  So that's what I told him.  It was never my particular strategy to enter a plea.  I was ready to pick a jury in the next half hour.

MR. GISENDANOR:   Do you speak Spanish?

MR. LOPEZ:   I do not.

17

MR. GISENDANOR:   When you were just having these discussions about pleading and going to trial, did you have an interpreter present?

MR. LOPEZ:   Yes, I did.

MR. GISENDANOR:   Spanish interpreter?

MR. LOPEZ:   Spanish interpreter.

THE COURT:   As opposed to German?  I've got a few questions, Mr. Lopez.

MR. LOPEZ:   Sure.

THE COURT:   What – did you have any discussions with Mr. Palacios as to what the maximum standards would be if he went to trial and was convicted?

MR. LOPEZ:   Yes, I always do when I go over the plea form because you have to explain to them what the maximum sentence is.

THE COURT:   But what was the maximum in this case?

MR. LOPEZ:   I believe this is the first three felonies, so I believe it would have been 30 years.

THE COURT:   Okay.  Was there any discussion you had with Mr. Palacios about the 30 years versus the 15 years?

MR. LOPEZ:   Yes, I did.  I advised him that given the fact that I don't specifically recall his prior record right offhand, right now, but I don't believe he had a significant prior record that if he went to trial and lost, he might get more that 15 years, but it probably wouldn't be significantly more than 15 years.  Just based on my opinion on sentencing judges in this Circuit.

THE COURT:   What discussion did you have with him about what would happen with his brother?

MR. LOPEZ:   I did not have any specific discussion with him about what would happen with his brother until after the plea which he entered against my advice, and I advised them

18

that I would speak to the prosecutor and just basically, "I will see what I can do, type of thing. "I will see if I can do something to get the charge reduced, dropped, or whatever I could do."

THE COURT:    You were not his brother's attorney, were you?

MR. LOPEZ:    I was not his brother's attorney, no, I was not.

THE COURT:    Did Mr. Palacios speak with you again focusing on March 1st of 1999, about the benefit he saw in going the plea route versus going to trial?

MR. LOPEZ:    To me, he just would not listen. He was not listening to anything I was saying. He was so – to me, he was so distraught about the situation with his brother, I believe they were climates [sic] and that he just felt that it was wrong what was happening to his brother. I can't tell him, "You have got your own case, you have got your own issues. Your brother has his own attorney and he is well taken care of with his own attorney. You need to focus on your case and I think given that fact that this is a 15 year minimum mandatory, it would be my advice that you need to go to trial." I tried to impress this upon him for at least a half an hour in the holding cell, but he just wouldn't listen. I think I even, at one point, advised Judge Steinberg that this was against my advice – against the advice of counsel. He was insisting on making a statement on the record to Judge Steinberg, which I told him – at [sic] had to, at one point stop the proceedings because he stood up and started making a statement about his involvement in the offense before we even picked a jury, or before he even pled, and I had to take him backing into the holding cell to stop him from doing it. He just – he wouldn't listen. He was so insistent to the point that once we were finished with the plea, or at least close to getting done with the plea, he still wanted to interject something and he, in fact, did interject something about his involvement in the offense in relation to his brother's lack of involvement.

. . .

THE COURT:    Okay. Let me ask you, Mr. Lopez, what you told Mr. Palacios about this other issue, the – you stated it – you

19

told him it will be overturned?  Did you ever tell him that?  Did you tell Mr. Palacios that it will be overturned?

MR. LOPEZ:   No, I never guarantee a result to any particular client. The thing I guarantee is, "That I'll do my best for you and I guarantee I'll do a good job for you."  That is the only thing I ever say.  I would never tell any client that, "this will happen" or "This is what will happen."  I just don't do that.

THE COURT:   What was the strongest thing, if anything, you said to him with regard to your perception of what would happen with regard to this case and the ruling with regard to the motion to suppress?

MR. LOPEZ:   I felt very strongly that Judge Evans had made the wrong decision, given the case law that I had in support of my motion, and I advised Mr. Palacios that we still had very good issues for appeal.  I did advise him of that, but the important thing to understand is, in relation to what Mr. Palacios has alleged here today, is that that really was not my thinking and it really did not come up until he was just insisting on not going to trial.  He over and over just insisted that he wanted to make – "I want to make a statement to the judge."  This is what I remember the most, "I want to make a statement to the judge.  I want to make a statement to the judge" and he would not listen.  "I want to make a statement to the judge.  As God is [sic] my witness, I want to make a statement" and that is what he was telling me.  What I got from that was that he was so overcome by the influence or pressure or whatever was happening, the dynamics between himself and his brother, that he just did not want to listen to anything I had to say any more and he wanted to help his brother out.  He did not want to go to trial.  Finally –

THE COURT:   Let me stop you for one minute.  I mean, from your testimony, my sense is that you said nothing to him that would have encouraged him to take a plea.  To the contrary, what you said, anything you said to him would have discouraged him.  I think there is somewhat of a factual issue here, but your testimony is that nothing you said to him was encouraging a plea?

MR. LOPEZ:                    No.  I did not encourage him to plea.  I felt that he had
                             very little to lose by going to trial and just in terms of the
                             way I would think about a case like that anyway, a 15
                             year minimum mandatory case, I just would not
                             encourage anybody to plea without a significant prior
                             record and "the issue of the motion to suppress is
                             preserved anyway, even if you go to trial."  So that the
                             only thing I can think back specifically, four years ago is,
                             why would I say that?  I mean, the issue is preserved at
                             trial anyway.

(Dkt. 10, Ex. 5, Vol. II, pp. 201-06; 209-11).

The state trial court ultimately found as follows at the conclusion of the evidentiary

hearing on these issues:

Okay.  Okay, I am prepared to rule on this issue as well.  Based again upon the
standard that I have already set forth in Strickland v. Washington, as set forth in
Judge Espinosa's order[10], I do not believe that the movement [sic] has satisfied the
standard for relief as noted.  Even if there were a finding – a factual finding that
there were errors made, Judge Espinosa noted the case of Meeks v. State at 382
So.2d 673 when court – parties in court stated that, "Effective assistance of counsel
does not mean the defendant must be afforded (inaudible) counsel."  In addition,
there are a number of factual issues which I cannot resolve at this point.  There are
clearly some factual issues as to what was said between Mr. Lopez and Mr.
Palacios.  In addition, I think beyond all that, that there's difficulty in determining if
there was prejudice to Mr. Palacios with regard to a plea, because there clearly was
a benefit he received in this plea.  That is, he could have gone to trial and been
convicted and received what, the maximum sentence of 30 years.  So there was
benefit, there's really no dispute that there was benefit to Mr. Palacios in entering
this plea.  Whether that benefit was minimal or whether it was 15 years – the
difference between 15 years and 30, I can only speculate, and that is not something
that I am going to speculate to.  But there's no question in my mind that there was
benefit received by virtue of the plea agreement.  Now, could Mr. Palacios have
gone to trial and been acquitted?  Maybe.  Could he have been convicted and then
had the 2nd District – they ruled the way they did.  Could they have ruled differently?
Maybe.  But that is all speculation.  So there's benefit in what did occur and with
regard to standard of counsel effectiveness, which is the issue as opposed to these
other issues, the primary issue being the effectiveness of counsel or ineffective
assistance of counsel, movement [sic] cannot meet the burden set forth in the

---

[10] This reference is to the state trial court's previous order directing the State to respond to the issues
presented at the evidentiary hearing.

> Strickland v. Washington and other related cases.  So the Court does deny relief as
> to issue 2a.  Okay, we will have the 2b.  I guess that was 2b as well.

(Dkt. 10, Ex. 5, Vol. II, pp. 213-14).

Beyond his scant allegations, Palacios does not present any factual basis to support these claims raised in Ground Six of his § 2254 petition.  He does not dispute any of Lopez's statements made during the evidentiary hearing.  In his reply, he simply contends that " the state court adjudication is contrary to, and involves an unreasonable application, of not only <u>Strickland</u> but also <u>Hill v. Lockhart</u>, ... as well as involves an unreasonable determination of the facts in light of the evidence presented." (Dkt. 9, p. 11).  He does not, however, offer any factual evidence to demonstrate that the state trial court improperly applied the standards set out in either *Strickland* or *Hill*.  Palacios has not overcome the presumption that the state trial court's factual findings were correct, nor has he rebutted the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.  Based on the bare allegations presented to support these claims and the evidence adduced at the evidentiary hearing on Palacios's Rule 3.850 motion, to the extent that Palacios presents the claims raised in Ground Six of the instant petition as ineffective assistance of counsel claims, the state trial court's rejection of the claims was a reasonable application of the *Strickland* standard.[11]  Thus, Palacios is not entitled to federal habeas relief on these claims on that basis.

Accordingly, the Court orders:

That Palacios's § 2254 petition is denied, with prejudice.  The Clerk is directed to

---

[11] The parties explicitly agreed at the evidentiary hearing that the *Strickland* standard was applicable to Palacios's claims as stated by Judge Espinosa in the order denying in part and directing the State to respond to the remaining claims presented in the Rule 3.850 motion.  (Dkt. 10, Ex. 5, Vol. II, pp. 125-26).

enter judgment against Palacios and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 19, 2007.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Francisco Palacios